## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                        :    **Chapter 7**
                                             :
FRANK P. D'AMBROSIO AND                      :
DIANE D. D'AMBROSIO,                         :
                                             :
                            Debtors.         :    **Case No.  08-15962 JFK**
_____              :
                                             :
ARTHUR P. LIEBERSOHN, TRUSTEE,               :
                                             :
                            Plaintiff,       :
                                             :
            v.                               :
                                             :
THOMAS J. VETRI,                             :
                                             :
                            Defendant.       :    **Adversary No. 09-0343**
_____              :


## OPINION

BY:   JEAN K. FITZSIMON
      United States Bankruptcy Judge

In this adversary proceeding, the Chapter 7 Trustee, Arthur Liebersohn, seeks a

judgment, pursuant to 11 U.S.C. § 548(a)(1)(A) & (B),[1] against the defendant, Thomas

_____

     [1]  The Trustee had also been proceeding under 11 U.S.C. § 542(b).  However,
he makes no mention of this Code section in his post-hearing memorandum of law.
See Plaintiff's Memorandum of Law, Docket Entry No. 35.  Instead, he states: "The
legal bases for this action are under 11 U.S.C. Sections 548(a)(1)(A) and (B)."  Id. at 2.
Accordingly, the Trustee is deemed to have waived his claim against the Defendant
under § 542(b).  In any event, turnover under § 542 is used to recover "what is
acknowledged to be property of the estate."  Shubert v. Stranahan (In re Pennsylvania
Gear Corporation), 2008 WL 2370169, at 4 (Bankr. E.D. Pa. April 22, 2008).  See also
Richardson v. The Huntington National Bank (In re CyberCo Holdings, Inc.), 382 B.R.
118, 143 (Bankr. W. D. Mich. 2008) ("Section 542 is available as a remedy only when
                                                                      (continued...)

J. Vetri ("Defendant"), in the amount of $52,010.19.[2]   This amount is based on the sum

of: (i) $28,422.79 representing the amount of the escrow deposit which the debtors,

Frank P. D'Ambroio ("Frank") and Diane D. D'Ambrosio (collectively, the "Debtors"),

were supposed to have received in connection with the sale of their real estate located

at 610 Braxton Road in Ridley Park, Pennsylvania (the "Braxton Property"); and

(ii) $23,597.40 which the Debtors received by check at the closing on the

aforementioned property.

At the trial of this matter, two witnesses testified, namely (1) Frank; and

(2) Michael Vetri ("Michael"), who is the father of the Defendant.  Following the trial, the

---

[1](...continued)
the bankruptcy estate already has an interest in the property sought to be turned over.
For example, a trustee would use Section 542 to recover a vehicle owned by the debtor
but in the possession of another party.").  This adversary proceeding does not involve
property which is "acknowledged" to be part of the estate.  Consequently, § 542 would
be inapplicable anyway.

[2]  In his post-trial memorandum, the Trustee asserts the following request for
relief: "[T]he Plaintiff respectfully requests that this Honorable Court enter an Order
*setting aside the transfer of 610 Braxton Road, Ridley Park, Pa.* and/or, in the
alternative, entering a judgment in the favor of the Plaintiff and against the Defendant in
the amount of $52,010.19."  Plaintiff's Memorandum of Law at 5, Docket Entry No. 35
(italics added).  However, in the Complaint, the only relief which the Trustee requested
against the Defendant was monetary relief in the amount of $52,010.19.  See
Complaint, Counts I, II, III & VI, Docket Entry No. 1. Nowhere in the Complaint did the
Trustee ever allege or request that the actual *transfer* of 610 Braxton Road should be
*set aside*.  See id.  Moreover, after the parties filed their second Joint Pretrial
Statement, which was still unclear and ambiguous as to the relief being sought, the
issues in dispute and the causes of action being asserted, both parties were put on
notice by the Court via an e-mail, dated January 4, 2011, that the Court was interpreting
the damages being sought by the Trustee as follows: "Plaintiff seeks to recover a total
of $52,010.19."  See e-mail, dated January 4, 2011, to the Trustee's counsel and the
Defendant's counsel.  The Trustee never responded to this e-mail.  Accordingly, the
Court will not expand the relief or transfers at issue in this case beyond the specific
monetary ones upon which the Trustee had been focusing prior to trial, namely the
$23,587.40 check and the $28,422.79 deposit which total $52,010.19.

parties were given the opportunity to file post-trial memoranda which they did.  Upon consideration, the Court shall grant judgment in favor of the Trustee and against the Defendant in the amount of $23,597.40.

## BACKGROUND

In February of 2001, the Debtors purchased the Braxton Property as their residence.  Trial Transcript, dated January 25, 2011 ("Tr."), at 11.  They granted their lender a mortgage on the Braxton Property.  Id.

In October of 2006, the Debtors purchased another home at 10 Sunnybank Lane, Aston, Pennsylvania (the "Sunnybank Property") for $320,000.  Tr. at 12 & Debtor's Bankruptcy Petition, Docket No. 1, Bankruptcy Case No. 08-15962.  Debtors only looked at the Sunnybank Property after Michael said that he would purchase the Braxton Property from them and use it as a rental.  Tr. at 18.  The basis of the relationship between Michael and the Debtors is unknown since no evidence on that matter was presented at trial.

When the Debtors purchased the Sunnybank Property, Michael provided them with $10,000 which was needed as a deposit for the purchase and said that, when he purchased the Braxton Property, he would take the $10,000 from the settlement.  Tr. at 7, 38.   After the Debtors' purchase of the Sunnybank Property, they moved into it and out of the Braxton Property.  Id. at 14.  During the year following the Debtors' purchase of the Sunnybank Property, Michael also gave the Debtors three cashier's checks in the amount of $7,000 each for a total of $21,000.  Id. at 7, 16.   Frank described the $31,000 which Michael gave to him and his wife as "an advance for the purchase of the [Braxton P]roperty."  Id. at 7.

3

The monthly mortgage on the Sunnybank Property was $1,800; the monthly mortgage on the Braxton Property was $1,200.  Tr. at 13.  Initially, the Debtors made the monthly mortgage payments on both properties but then Michael agreed to make the monthly mortgage payments on the Braxton Property.  Id. 14-15.  While Frank and Michael both testified that Michael made mortgage payments on the Braxton Property while it was still owned by the Debtors, there was no consensus as to how many payments he made.  Id. at 15 (Frank admitted that Michael paid the mortgage on the Braxton Property but could not say how many times he did so in a year); 38-40 (Michael testified that he made around ten to twelve mortgage payments on the Braxton Property totaling around $11,500 to $14,400).  According to Michael, the mortgage payments were made by checks drawn on his and the Defendant's bank account.  Id. at 39-40.  Neither party presented any evidence which explains why Michael did not purchase the Braxton Property on or about the date when the Debtors purchased the Sunnybank Property.

In November of 2007, the closing was held on the sale of the Braxton Property.  Tr. at 8-9.  While Michael was supposed to have been the purchaser of the Braxton Property, his son, the Defendant, "wound up" being the purchaser at the closing.  Id. at 4, 40.  At the closing, Frank met the Defendant for the first time.  Id. at 21.  Frank never had any other dealings with the Defendant other than selling the Braxton Property to him.  Id. at 21.

Besides the Debtors and the Defendant, Michael and someone from the title company, which was Eagle National Land Transfer, LLC ("Eagle National"), attended the closing.  Id. at 6; Exhibit P-2 (HUD Settlement Statement).  At the closing, Frank

4

signed a HUD Settlement Statement for the sale of the Braxton Property.  Id. at 5-6;

Exhibit P-2 (HUD Settlement Statement).

When the Braxton Property was sold, the Debtors satisfied the mortgage which

they owed on it.  Tr. at 8-9, 11-12.  According to first page of the HUD Settlement

Statement, $28,422.79 was "paid by or on behalf of the" Defendant as a "deposit or

earnest money."  Exhibit P-2  (line 201).  The HUD Settlement Statement does not

indicate when the $28,422.79 was paid.  Id. (lines 201, 501).  Frank testified that he

never received payment of the $28,422.79.  Tr. at 5-6.  The HUD Settlement Statement

describes the $28,422.79 deposit, on line 501, as: "Excess Deposit (see instructions[.]"

Exhibit P-2 (line 501).  However, neither party sought to introduce the "instructions" into

evidence at the trial or offered testimony to explain what the "instructions" were.

At the settlement, the Debtors received a check for $23,587.40.  Tr. at 10,

Exhibit P-2 (line 603) & Exhibit D-1 (copy of check for $23,587.40 from Eagle National

Land Transfer LLC made payable to the order of Frank P. D'Ambrosio and Diane

D'Ambrosio).  The Debtors gave this check to the Defendant who deposited it into an

account which he controlled and, thereby, received the funds.  Plaintiff's Request for

Admissions Nos. 1 & 2.[3]  When the Debtors gave this check to the Defendant, they did

-----

[3]  The matters set forth in Plaintiff's Requests for Admission are deemed "admitted" and are treated as conclusive facts in this adversary proceeding for the reasons which the Court discusses in the text of this Opinion at pages 10-14.  Notably, at the trial, testimony in conflict with the admissions was presented.  For example, at the trial, Frank D'Ambrosio testified that he and his wife received the check for $23,587, endorsed it, and then gave it to Michael and not the Defendant.  Tr. at 10.  His testimony was as follows:

> Q.    Sir, did you receive 23,587.40 from that
>        closing?

(continued...)

not owe him any money.  Id. at No. 3.   The Defendant gave no consideration in exchange for this check and he conferred no benefit on the Debtors when he received the check.  Id. at Nos. 4 & 5.  Moreover, when the Defendant received this check on November 9, 2007, the Debtors were: (i) insolvent or were rendered insolvent as a result of transferring the check to the Defendant; and (ii) the Debtors were unable to pay their bills as they became due.  Id. at Nos. 6 & 8.  Furthermore, after transferring the $23,587.40 check to the Defendant, the Debtors were left with unreasonably small capital.  Id. at No. 7.

---

[3](...continued)

> A.    No, I did not.
>
> Q.    Did you happen to receive a check payable to yourself and your wife for that amount?
>
> A.    Yes.
>
> Q.    And what happened to that check?
>
> A.    We signed it over to Michael Vetri.
>
> Q.    For what purpose?
>
> A.    When we purchased our second home, Mr. Vetri gave me money that would have been from the sale of the home for the 610 Braxton Road in advance prior to the sale of the home. Through the course of the year from October to November, when we made settlement, he gave me three separate occasions, $7,000 increments, for the sale of the home that didn't happen yet.

Id. at 6-7.  This testimony obviously conflicts with the fact that "[t]he Debtors gave this check to the Defendant who deposited it into an account which he controlled and, thereby, received the funds."  Plaintiff's Requests for Admission Nos. 1 & 2 (emphasis added).

On September 16, 2008, which was less than one year after the closing on the Braxton Property, the Debtors filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code.  Bankruptcy Case No. 08-15962, Docket Entry No. 1.  On September 17, 2008, Arthur Liebersohn was appointed as the Chapter 7 Trustee.  Id. at Docket Entry No. 4.

On November 5, 2009, the Chapter 7 Trustee commenced this adversary proceeding by filing the Complaint against the Defendant and two other defendants.[4]  Adversary Proceeding No. 09-0343, Docket Entry No. 1.  On May 20, 2010, the Court approved a Stipulation dismissing the adversary proceeding with prejudice as to the two other defendants.  Id., Docket Entry No. 12.

Before the status conference on August 17, 2010, the Defendant was served with Plaintiff's Request for Admissions.[5]  These requests for admission stated the following:

> 1.    Please admit that on or about November 9, 2007, the Defendant received a check from the Debtors in the amount of $23,587.40.
>
> 2,    Please admit that the Defendant deposited the check set forth in Paragraph 1 above into an account in which he was in control and received the said funds.

---

[4]  The two other defendants were: (i) Eagle National; and (ii) Nova Savings Bank.

[5]  The copy of Plaintiff's Request for Admissions which was admitted into evidence at the trial does not have a Certificate of Service attached to it.  See Exhibit P-1.  However, at the status hearing on August 17, 2010, Defendant's counsel acknowledged that he had received Plaintiff's Request for Admissions.  Moreover, Defendant has never asserted that he was not properly served with them.

7

3.      Please admit that the Debtors owed no money to the Defendant at the time he received the check set forth in Paragraph 1 above.

4.      Please admit that the Defendant gave no consideration in exchange for the check set forth in Paragraph 1 above.

5.      Please admit that the Defendant conferred no benefit upon the Debtors at the time he received the check set forth in Paragraph 1 above.

6.      Please admit that the transfer set forth in Paragraph 1 above was made while the Debtors were insolvent or rendered them insolvent.

7.      Please admit that the transfer set forth in Paragraph 1 above left the Debtors with unreasonably small capital.

8.      Please admit that the Debtors were unable to pay their bills as they came due as of November 9, 2007.

See Plaintiff's Request for Admissions.  At the status hearing, the Defendant's counsel stated that he would "file a response to the request for admissions."

On December 23, 2010, the parties filed a Joint Pre-Trial Statement.[6]  See Docket Entry No. 29.  In Parts VII and VIII of the Joint Pre-Trial Statement, in compliance with the Court's Pre-Trial Order, dated January 22, 2010, the parties listed the exhibits and discovery items/trial depositions "to be offered into evidence" at trial.

---

[6]  The parties filed their original Joint Pretrial Statement in July of 2010.  It was unsatisfactory in that it failed to clearly list the undisputed and disputed issues of fact, damages or relief being sought, causes of action being pursued and legal issues at stake.  The Court ordered the parties to revise the statement which they did by filing the Joint Pretrial Statement that was docketed on December 23, 2010.  See Docket Entry No. 29.

<u>See</u> Pre-Trial Order, dated Jan. 22, 2010, Docket Entry No. 9.  Among the items listed
in Part VII and Part VIII, are "Plaintiff's requests for admissions" and "Defendant's
answers to plaintiff's request for admissions <u>to be filed</u>."  <u>See</u> Joint Pre-Trial Statement
at pg. 3 (underlining added).  Consequently, as of December 23, 2010, Defendant's
counsel was on notice that: (i) the Trustee intended to offer Plaintiff's Request for
Admissions into evidence at the trial; and (ii) the Defendant still had not filed an answer
to the Plaintiff's Request for Admissions.

On January 25, 2011, trial of this adversary proceeding began at 1:15 p.m.
Docket Entry No. 31; Tr. at 1.  Fifteen minutes later, Defendant filed an answer to the
Plaintiff's Requests for Admission.  <u>See</u> Defendant Thomas Vetri's Answer to Plaintiff
Arthur Liebersohn, Trustee's Request for Admissions ("Defendant's answer to Plaintiff's
Requests for Admission"), Docket Entry No. 30.[7]  At the close of the Trustee's case, his
counsel sought to have Plaintiff's Request for Admissions admitted into evidence as
having been served upon the Defendant but never answered.  Tr. at 23.  In response,
Defendant's counsel informed the Trustee and the Court that, while no answer to
Plaintiff's Request for Admissions had been filed as of the morning of the trial, an
answer had "subsequently been filed."  <u>Id.</u>  Counsel for the Defendant described his
failure to previously file an answer to Plaintiff's Request for Admissions as an
"inadvertent error."  <u>Id.</u> at 23-23.  Defendant's counsel explained as follows:

> When Mr. Kaliner today told me that I'm submitting these
> requests for admission – relying on them today.  I
> immediately walked out in the hall and called my secretary

---

[7]  In the answer, Defendant admitted paragraph 1 of Plaintiff's Requests for
Admission but denied paragraphs 2 through 8.  <u>See</u> Defendant's Answer to Plaintiff's
Requests for Admission.

>and said, were those filed?  And apparently they weren't.
>And I told her if they had not been on the docket, docket
>them today.

Id. at 24.  Following argument on the issue, the Court ruled against the Defendant and

admitted the Plaintiff's Request for Admissions into evidence.

At the close of trial, the Court requested the parties to file post-trial briefs which

they did.  See Docket Entry Nos. 32, 35 & 36.  While the Defendant concedes that his

answer to Plaintiff's Requests for Admission was untimely, see Defendant Thomas

Vetri's Post Hearing Memorandum ("Defendant's Memorandum") at 3 (acknowledging

that "[D]efendant's answers to Plaintiff's Requests for Admission were "untimely[.]"), he

nevertheless still contends that the Trustee should not be allowed to rely upon the

requests for admission in proving his claims.

## DISCUSSION

### I.  Plaintiff's Requests for Admission

A.      Defendant's Argument that Plaintiff's
Requests for Admission Were Improper

Defendant contends that Plaintiff's Request for Admissions were improper

because they: (i) requested the Defendant to "admit certain sections of the relevant law

without stating a specific fact in connection with the law"; and (ii) failed to include facts

that are relevant to the litigation.  See Defendant's Post-Trial Memorandum at 3-4.

Neither of these arguments are persuasive.

First, Rule 36 of the Federal Rules of Civil Procedure, which is applicable to this

adversary proceeding pursuant to Rule 7036 of the Federal Rules of Bankruptcy

Procedure, governs Requests for Admission.[8]  According to Rule 36(a)(1), "[a] party

may serve on any other party a written request to admit . . . the truth of any matters . . .

relating to . . . facts, the application of law to facts, or opinions about either[.]" Fed. R.

Civ. P. 36(a)(1).  All of the Plaintiff's requests for admission fit within this requirement.

See e.g., Fetla's Trading Posts, Inc. v. Granet (In re Fetla's Trading Post, Inc.), 2006

WL 1234228, at *6 (Bankr. N.D. Ill. May 4, 2006) (concluding that, as a result of the

defendant's failure to respond to requests for admission, he admitted the truth of

requests for admission such as the following: "[T]he Plaintiffs were insolvent at the time

of each transfer or became insolvent as a result thereof.[.]"); Seitz v. Yudin (In re

Cavalier Industries, Inc.), 2002 WL 975868, at *2 (Bankr. E.D. Pa. April 16, 2002)

(opining that the defendant "admitted the Debtor's insolvency by failing to answer a

request for admission to that effect.").  Indeed, none of the requests are ""boilerplate

recitation[s] of the statute" as Defendant contends.

Second, the Plaintiff's Request for Admissions relate to the facts as viewed or

known at the time by the Trustee.  See Complaint ¶¶ 11, 13 (alleging that a check in the

amount of $23,587.40 was issued and made payable to the Debtors at the closing on

the Braxton Property but that the check was deposited by the Defendant into his bank

account).  When a party answering a request for admission has a contrary or more

expansive view of the facts which he considers relevant thereto, he "may qualify his

answer based on his understanding of the facts." First Options of Chicago, Inc. v.

Wallenstein, 1996 WL 729816, at *3 (E.D. Pa. December 17, 1996).  See also Bisker v.

---

[8]  While multiple written requests for admission are typically referred to as
"Requests for Admission," which is the title of Rule 36, the Trustee labeled his multiple
requests for admission as "Plaintiff's Request for Admissions."

GGS Information Services, Inc., 2009 WL 3241675, at * 3 (M.D. Pa. October 1, 2009) (ruling that defendant properly responded to request for admission that sought to have the defendant admit "that, at the time of [Plaintiff's] termination, she was not allowed to perform her job functions at home" by admitting that the Plaintiff was not allowed to work from home but denying that it terminated her since, throughout the action, the defendant had maintained that it had not terminated the Plaintiff). Thus, the Trustee was not required to include facts in Plaintiff's Request for Admissions that conformed to the facts of the case as construed by the Defendant. In the event the Defendant wanted to expand or amplify the facts in his answer to the requests for admission, he was entitled to do so.

> **B.** Impact of Defendant's Failure to File Timely
> Response to Plaintiff's Requests for Admission

Rule 36 has a subsection entitled "Time to Respond; Effect of Not Responding." Fed. R. Civ. P. 36(a)(3). This subsection of the rule provides, in pertinent part, that "a matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Id. Pursuant to this provision, the Defendant's failure to timely respond to Plaintiff's requests for admission means that the matters set forth therein are deemed admitted. The matters deemed admitted (the "Admissions") are the following:

> 1. On or about November 9, 2007, the Defendant received a check from the Debtors in the amount of $23,587.40.

> 2, The Defendant deposited the check set forth in Paragraph 1 above into an account in which he was in control and received the said funds.

3.      The Debtors owed no money to the Defendant at the time he received the check set forth in Paragraph 1 above.

4.      The Defendant gave no consideration in exchange for the check set forth in Paragraph 1 above.

5.      The Defendant conferred no benefit upon the Debtors at the time he received the check set forth in Paragraph 1 above.

6.      The transfer set forth in Paragraph 1 above was made while the Debtors were insolvent or rendered them insolvent.

7.      The transfer set forth in Paragraph 1 above left the Debtors with unreasonably small capital.

8.      The Debtors were unable to pay their bills as they came due as of November 9, 2007.

<u>See</u> Plaintiff's Requests for Admission.

C.      Defendant's Argument that Admissions Are Inapplicable Since Conflicting Testimony Was Presented at Trial

At trial, testimony was presented which conflicts with the Admissions.  Defendant contends that the outcome of this adversary proceeding should be governed by the testimonial evidence presented at trial rather than by the Admissions.  However, as a result of the Defendant's failure to timely answer the Plaintiff's Requests for Admission, the matters detailed therein are "deemed conclusively admitted."  <u>Harrison v. Ammons</u>, 2009 WL 2588834, at *4 (M.D. Pa. Aug. 19, 2009).  An admission made pursuant to Rule 36 is not "merely another layer of evidence"; rather, it is "an unassailable statement of fact that narrows the triable issues in the case."  <u>Airco Industrial Gases, Inc. v. The Teamsters Health and Welfare Pension Fund of Philadelphia and Vicinity</u>,

13

850 F.2d 1028, 1037 (3d Cir. 1988).   Even conflicting testimonial evidence does not

alter the effect of a Rule 36 admission.  Id. at 1036-37.   Therefore, the Court rejects

the Defendant's contention.  In resolving this adversary proceeding, the Court will give

effect to the Admissions over any contrary testimony offered at the trial.[9]

## II.  Constructive Fraud

The Trustee alleges constructive fraud pursuant to § 548(a)(1)(B), which

provides, in pertinent part:

> (a)(1) The trustee may avoid any transfer . . . of an interest
> of the debtor in property, or any obligation . . .  incurred by
> the debtor, that was made or incurred on or within 2 years
> before the date of the filing of the petition, if the debtor
> voluntarily or involuntarily--

---

[9]   At trial, Defendant's counsel never moved to have the Admissions withdrawn
or amended by Defendant's Answer to Plaintiff's Request for Admissions.  See Fed. R.
Civ. P. 36(b).  However, even if he had made such a motion, the Court would have
exercised its discretion and denied it.  See Petrunich v. Sun Building Systems, Inc.,
2006 WL 2788208, at *3 (M.D. Pa. September 26, 2006) (observing that "[t]he Court
has considerable discretion in determining whether to allow withdrawal or amendment
of an admission.").  Discovery in this adversary proceeding closed on April 22, 2010.
See Pretrial Order, dated January 22, 2010. Docket Entry No. 9.  At the status
conference in August of 2010, Defendant's counsel announced that he intended to file
an answer on Defendant's behalf to the Plaintiff's Request for Admissions.  Yet, by
December of 2010, he still had not done so.  Based on the parties' Joint Pre-trial
Statement that was docketed on December 23, 2010, Defendant's counsel was
indisputably on notice that the Trustee intended to offer Plaintiff's Request for
Admissions as an exhibit at the trial.  Moreover, Defendant's counsel was on notice, as
of December 23, 2010, that he still had not filed an answer on Defendant's behalf to the
requests for admission.  Yet, he took no action to file an answer on Defendant's behalf
until after the trial of this adversary proceeding had begun on January 25, 2011.
Defendant's delay in responding to the Plaintiff's Request for Admissions was entirely
unreasonable and certainly preventable.  See Coca-Cola Bottling Company of
Shreveport, Inc. v. Coca-Cola Co., 123 F.R.D. 97,107 (D. Del. 1988) (concluding that
plaintiffs were prejudiced "by defendant's unreasonable delay in bringing its motion to
amend and clarify its admissions" under Rule 36(b)).  Had the Court suddenly allowed
the Defendant, at trial, to withdraw the Admissions and/or amend them based on
Defendant's Answer to Plaintiff's Request for Admissions, the Trustee would certainly
have been prejudiced in presenting his case.

14

* * *

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).  The Trustee, as the party asserting the claim for constructive fraud, bears the burden of establishing the requisite elements.  <u>Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corporation Retirement Plan No. 003 (In re Freuhauf Trailer Corporation)</u>, 444 F.3d 203, 210–11 (3d Cir.2006).

> A.   Constructive Fraud as to the Transfer
>      <u>Of the Check for $23,587.40</u>

Based on the evidence admitted at trial and the Admissions, the Trustee has established the elements required to prove his claim for constructive fraud under § 548(a)(1)(B) for the Debtors' transfer of $23,587.40 to the Defendant.  The evidence

and Admissions show that: (i) less than a year before the Debtors filed their bankruptcy case, they received a check for $23,587.40; (ii) upon their receipt of the check, the Debtors gave the check to the Defendant who deposited it into an account over which he had control and, thereby, received the $23,587.40 transfer; (iii) the Debtors received less than equivalent value in exchange for this transfer because the Defendant did not give them any consideration in exchange for the $23,587.40 check and did not confer any benefit upon the Debtors at the time he received the check; and (iv) the Debtors were insolvent or were thereby rendered insolvent when they transferred the $23,587.40 check to the Defendant.  Consequently, the Debtor's transfer of $23,587.40 to the Debtors shall be avoided pursuant to § 548(a)(1)(B).

B.    Constructive Fraud as to the $28,422.79
Listed on the HUD Settlement Statement

The other "transfer" at issue is the deposit of $28,422.79 which is listed twice on the HUD Settlement Statement.[10]  The $28,422.79 deposit is listed under the "Summary of Borrower's Transaction," in the subsection thereof entitled "Amounts Paid by or on Behalf of the Borrower," on line 201 which is labeled "Deposit or escrow money." Exhibit P-2 (line 201) (underlining added). The $28,422.79 is listed again under the "Summary of Seller's Transaction," in the subsection thereof entitled "Reductions in Amount Due to Seller" on line 501 which contains the description "Excess Deposit (see instructions)[.]" Id. (line 501). As the Court noted above, neither party made any effort to make the "instructions" to which line 501 refers part of the record before the Court.

_____

[10] Notably, the Trustee does not dispute the authenticity of the HUD Settlement Statement which he offered into evidence.  See Exhibit P-2.

16

At trial, Frank testified that he never received a payment of $28,422.79.  This testimony is inconsistent with the information on the HUD Settlement Statement which Frank signed, acknowledging that he had read it and that, "to the best of his knowledge and belief," it was a "true and accurate statement of all receipts and disbursements made on [his] account or by [him] in this transaction."  See Exhibit P-1.  Moreover, it is undisputed that Michael, who was originally supposed to purchase the Braxton Property, advanced the following amounts to the Debtors prior to the closing on that property: (i) $21,000 in the form of three separate payments of $7,000 each; and (ii) $10,000 in the form of the deposit which he paid for them in connection with their purchase of the Sunnybank Property.  In addition, Michael paid the monthly mortgage on the Braxton Property, which was $1,200, for some period of months.  According to Michael, these payments were made by checks drawn on his and the Defendant's bank account.  Tr. at 39-40.  Even according to Frank, Michael made these payments as advances on the sale of the Braxton Property.  While the Defendant and not Michael ended up purchasing the property, the Trustee failed to establish that Michael did not pay the $28,422.79 deposit "on behalf of" the Defendant by way of the advances which he made to the Debtors in anticipation of the sale of the Braxton Property.[11]

---

[11]   During the argument phase of trial, the Trustee' s counsel acknowledged the following:

> The testimony does reflect that there were some offsets that third parties had sort of made here, which nevertheless still shows that there was a — even if all that's true, and I don't disbelieve the debtor's testimony, that there's still a shortfall in the amount of money that the debtor was supposed to have received from the sale of this property, that's $52,010.19 when you add up the net, as well as the deposit,

(continued...)

Consequently, the Trustee did not prove, by a preponderance of the evidence, that the

Debtors received "less than a reasonably equivalent value" in exchange for the

$28,422.79 deposit.  11 U.S.C. § 548(a)(1)(B)(i). Consequently, the Trustee cannot

avoid the $28,422.79 transfer under § 548(a)((1)(B).[12]

### III.  Actual Fraud

The actual fraud provision in § 548(a)(1)(A) states, in relevant part:

> (a)(1) The trustee may avoid any transfer (including any
> transfer to or for the benefit of an insider under an
> employment contract) of an interest of the debtor in property,
> or any obligation (including any obligation to or for the
> benefit of an insider under an employment contract) incurred
> by the debtor, that was made or incurred on or within 2 years
> before the date of the filing of the petition, if the debtor
> voluntarily or involuntarily--
>
>> (A) made such transfer or incurred such obligation
>> with actual intent to hinder, delay, or defraud any
>> entity to which the debtor was or became, on or after
>> the date that such transfer was made or such
>> obligation was incurred, indebted[.]

11 U.S.C. §548(a)(1)(A).  The Trustee bears the burden of establishing that the

Debtors, as the transferors, made the transfer at issue with actual intent to hinder,

delay, or defraud any creditor.  Shubert v. Stranahan (In re Pennsylvania Gear

Corporation), 2008 WL 2370169, at *9 (Bankr. E. D. Pa. April 22, 2008); Burtch v.

---

[11](...continued)
less the amount of the loans that he conceded that he owed
to Michael Vetri of $31,000, still leaves a $21,010.19
balance that Thomas Vetri failed to pay for this property.

Tr. at 46.

[12] The Trustee did not seek to avoid the transfers at issue as preferential
transfers under 11 U.S.C. § 547.

Harris (In re Harris), 2003 WL 23096966, at *2 (Bankr. D. Del. Dec. 30, 2003).  Since

"individuals are rarely willing to admit intent, actual fraud is rarely proven by direct

evidence."  Shubert, 2008 WL 2370169, at *9 (Bankr. E. D. Pa. April 22, 2008).

However, there are factors, commonly referred to as "badges of fraud," which courts

consider in determining whether fraud as been proven by circumstantial evidence.

Holber v. Dolchin Slotkin & Todd, P.C. (In re American Rehab & Physical Therapy,

Inc.), 2006 WL 1997431, at *15–16 (Bankr. E.D. Pa. May 18, 2006).  The badges of

fraud include whether:

> (1) the transfer or obligation was to an insider;

> (2) the debtor retained possession or control of the property transferred after the transfer;

> (3) the transfer or obligation was disclosed or concealed;

> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

> (5) the transfer was of substantially all the debtor's assets;

> (6) the debtor absconded;

> (7) the debtor removed or concealed assets;

> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Id. at *15–16 (Bankr. E.D. Pa. May 18, 2006) (*citing* Schaps v. Just Enough Corporation

(In re Pinto Trucking, Inc.), 93 B.R. 379, 386 (Bankr. E.D. Pa. 1988)).

Since the Court has already concluded that the Trustee is allowed to avoid the

Debtors' transfer of the $23,587.40 check under § 548(a)(1)(B), the only issue is

whether the Trustee can avoid the transfer of the $28,422.79 escrow deposit, which the

Debtors assert they did not receive, under the actual fraud subsection in § 548(a)(1)(A).

Assuming for purposes of this decision that the non-payment of the deposit constitutes

a "transfer" as that term is defined in the Code, the Court concludes, based on its

consideration of the badges of fraud listed above, that the Trustee cannot avoid the

$28,422.79 transfer. Even utilizing the "badges of fraud," the Trustee failed to establish

actual fraud under the circumstances of this case.[13]   Therefore, the Trustee is not

entitled to avoid the $28,422.79 transfer pursuant to § 548(a)(1)(A).

## SUMMARY

Since the Trustee proved that he is entitled to avoid the transfer from the

Debtors to the Defendant in the amount of $23,597.40, he shall be granted a judgment

in this amount against the Defendant.[14]   However, since the Trustee did not establish

---

[13]   The Trustee did not establish that: (i) the transfer was to an insider; (ii) the
Debtors retained possession or control of the property transferred after the transfer;
(iii) the transfer or obligation was disclosed or concealed; (iv) the Debtors were
threatened with suit before the transfer was made; (v) the transfer was of substantially
all the Debtors' assets; (vi) the Debtors absconded; (vii) the Debtors removed or
concealed assets; (vii) the value of the consideration received by the Debtors was not
reasonably equivalent to the value of the asset transferred or the amount of the
obligation incurred; or (viii) the transfer occurred shortly before or shortly after the
Debtors incurred a substantial debt.

[14]   Notably, a trustee is empowered to avoid fraudulent transfers under § 548.
However, the trustee derives his or her authority to recover the property fraudulently

(continued...)

his right to avoid the alleged fraudulent transfer of $28,422.79 under § 548, he shall not

be granted any relief with regard thereto.

DATED:   July 18, 2011.

_____

HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge

---

[14](...continued)
transferred for the benefit of the estate pursuant to § 550.  See Sanders v. Hang (In re Hang), 2007 WL 2344958, at *5 (Bankr. E.D. Cal. August 16, 2007) ("Once a trustee demonstrates the right to avoid a transfer, the trustee is entitled to recover the transfer or the value of the transfer pursuant to § 550(a).").